LEWISTON DRAINAGE DISTRICT, Respondent, vs. DIEHL, County Treasurer, and another, Appellants.

FARM DRAINAGE BOARD OF COLUMBIA COUNTY, Respondent, vs. SAME, Appellants.

*February 17—April 12, 1938.*

For the appellants there was a brief by *William W. Leitsch,* district attorney of Columbia county, and *Grady, Farnsworth & Walker* of Portage of counsel, and oral argument by *Miss Dorothy Walker* and *Mr. Leitsch.*

For the respondents there was a brief by *Rogers & Owens* of Portage, and oral argument by *Harlan B. Rogers.*

A brief was also filed by *Richmond, Jackman, Wilkie & Toebaas* of Madison, attorneys for the Wisconsin County Boards Association, as *amici curiæ.*

ROSENBERRY, C. J. The issue involved upon both appeals is whether, when a county exercises its right under sec. 74.44, Stats., to be the exclusive purchaser at tax sales, it must bid in all drainage-assessment certificates and immediately account for the same in cash to the drainage units. It is the contention of the defendants that upon such sale the county must bid in drainage certificates as agent and in trust for the drainage units, but is not required to pay for the same until it receives payment for the assessments. Plaintiffs contend that where the county holds exclusive tax sale under sec. 74.44, Stats., and thereby deprives the drainage units of the benefits of competitive bidding, the county must bid in such drainage certificates and forthwith pay for the same in cash.

A review of the history of the collection of delinquent taxes will be helpful in reaching a correct solution of the questions presented. A county may become the owner of

certificates on a tax sale in one of two ways: (1) By operation of law, and (2) by purchase.

I. *Statutory Bidder.* Since the enactment of sec. 9, ch. 22, Laws of 1859, which provided:

"If any parcel of land cannot be sold for the amount of taxes, interest and charges thereon, it shall be passed over, for the time being, but shall, before the close of the sale, be re-offered for sale, and if the same cannot be sold for the amount aforesaid, the county treasurer shall bid off the same for the county for such amount,"

counties have been required to bid in unsold lands. Sec. 9 now appears as sec. 74.42, Stats.

By sec. 95, ch. 18, Stats. 1858, when the town treasurer made his return of delinquent taxes to the county treasurer, the county treasurer was required to credit the town treasurer with the amount of taxes so returned as unpaid. This procedure permitted the town treasurer to retain in the town treasury any moneys collected by him except for state taxes, and the county treasurer was thereupon required to collect the amount of the delinquent taxes for the use of the county.

This was made clear by the revision of 1878. The last clause of sec. 1114 of that revision provided:

"All taxes so returned as delinquent shall belong to the county, and be collected, with the interest and charges thereon, for its use."

Under the law as it stood down to 1898, see sec. 1114, the county was the owner of all delinquent taxes returned to it by the various town, city, and village treasurers, but by the terms of this section if the delinquent taxes exclusive of the five per cent collection fee exceeded the sum then due the county for unpaid county taxes, such excess, when collected, belonged to the town treasurer for the use of the town. Under this provision it was held (see XVI Op. Atty. Gen. 1927, p. 673) that the county was not required to pay any excess of the delinquent roll over and above the amount of

the county levy until the same was actually collected by process of sale or by redemption, although the county had bid in the land under the provisions of what is now sec. 74.42. It appears therefore to be clear that where the county becomes a bidder by statute (sec. 74.42) it is not required to settle with the taxing districts for any excess above county taxes until the money is actually in its hands either by way of redemption or sale of lands deeded to it as a statutory bidder under the law.

II. *Purchaser.* In 1917, the legislature enacted ch. 268, which created sec. 1138*m*, now sec. 74.44, Stats., which was as follows:

"The county board of any county may authorize and direct the county treasurer to bid in and become the purchaser of *any or all such lands* as are sold *for general taxes only* for the amount of such general taxes, interest and charges remaining unpaid thereon, excepting such lands against which there are outstanding certificates of sale. *All laws relating to the sale or purchase of lands sold for the nonpayment of such taxes, and to the redemption of such lands, shall apply and be deemed to relate to the sale or purchase of such lands by the county.*"

This enactment was held to be unconstitutional in *State ex rel. Mason v. Larsen* (1919), 169 Wis. 298, 172 N. W. 707, because it enabled the county to discriminate as between taxpayers and so become the purchaser of some lands, but not of all lands. This case was decided May 13, 1919.

The legislature of 1921 enacted ch. 96, which amended sec. 1138*m*, Stats., to read as follows:

"The county board of any county may authorize and direct the county treasurer to bid in and become the purchaser of all lands *sold for taxes* for the *amount of taxes*, interest and charges remaining unpaid thereon. All laws relating to the sale or purchase of lands sold for the nonpayment of such taxes, and to the redemption of such lands, shall apply and be deemed to relate to the sale or purchase of such lands by the county."

It should be noted here that the act of 1917 permitted the county to be an exclusive purchaser of such lands as were sold for general taxes only. This eliminated special assessments and all other taxes not falling within the classification of general taxes, including drainage assessments. By the act of 1921 the county might make itself, by resolution of the county board, the exclusive purchaser of all lands sold for taxes, a very significant change in the law, the effect of which will be seen later. By both acts all laws relating to the sale or purchase of lands sold for nonpayment of taxes were made applicable to a purchase by the county. At the time of the enactment of each of these statutes the provisions of sec. 74.41, Stats., were in effect. It provided as follows:

"The county treasurer may, in his discretion, require immediate payment of every person to whom any such tract or parcel thereof shall be struck off; and in all cases where the payment is not made within twenty-four hours after the bid he may declare such bid canceled and sell the land again or may sue the purchaser for the purchase money and recover the same, with costs and ten per cent damages; and any person so neglecting or refusing to make payment shall not be entitled after such neglect to have any bid made by him received by the treasurer during such sale."

This statute has always been construed to require the purchaser to pay in cash. Under a similar statute it has been held that the giving of credit renders the sale invalid. See note 33 L. R. A. 481. Under the law the county having been required to credit the various treasurers with the amount of the county taxes, the county as a purchaser would be required as a matter of practice to pay only the amounts due in excess of the county taxes to the various town, village, and city treasurers. The other provisions of the statutes relating to the issuance of certificates and sale of lands were applicable to the county whether it became a holder by

operation of law or by purchase. The only difference was in the disposition of proceeds.

We shall now consider the law relating to the collection of drainage assessments. We shall first consider the case of the drainage district.

Sec. 89.36 (1), Stats. 1935, provides:

"If an assessment against any land is not paid to the commissioners when due, the commissioners shall, on, or before December first, certify the same to the clerk of the town, city or village in which the delinquent lands are situated, as due and unpaid, and such clerk shall enter the same in the tax roll of that year against the land assessed, but in a column separate from the general tax, and the same shall be collected in the same manner as general taxes are collected. . . ." (Exception not material here.)

Sec. 89.37, Stats. 1935, provides:

"(1) Such assessments against lands as are not paid to the commissioners or to the town, city or village treasurer shall be returned by such treasurer to the county treasurer, in the same manner and at the same time as delinquent taxes, but separately therefrom. The county treasurer shall advertise the same in his list of lands to be sold for unpaid taxes, and unless paid to him prior to the tax sale, he shall sell such lands for the taxes and drainage assessments against the same treating such drainage assessments the same as, but keeping them separate from, the unpaid taxes on his records. When he issues certificates of sale of land for taxes and drainage assessments, he shall issue a separate certificate for the amount of drainage assessments, penalties and accrued interest thereon. No extra advertising fee shall be added to the certificate of sale for drainage assessments when the land was at the same time sold for taxes as well as for drainage assessments. In case the tax on any land shall be paid and the drainage assessment not paid the county treasurer shall proceed to sell such land for drainage assessment or assessments in the same manner in which he would proceed if the taxes thereon were unpaid. The tax certificate and the drainage assessment certificate on the same land

may be assigned separately or together but at the public sale they shall be offered and sold together. . . .

"(4) (b) The county bidding in such drainage assessment certificates shall not be held or required to pay therefor, or be in any manner held liable thereon, but shall hold and sell and assign the said certificates in trust for the benefit of the drainage district in which the lands so sold are situated.

"(c) Whenever any lands, located within any drainage district, shall have been offered for sale and such lands have not been sold, the county treasurer of the county in which such lands are situated shall bid in such lands for the county in trust, but the county shall not in any way be liable for such unpaid or future drainage assessments; and no credit shall be extended by the county to the treasurer of the town, city, or village, within which such lands lie, for such unpaid assessments on the lands so bid in, but the county clerk shall give to such town, city, or village treasurer a statement showing the amount of such unpaid assessment on such lands bid in by the county. Said certificates shall be held or assigned by the county only, in trust for such drainage district."

The question for decision is, The county of Columbia having under the provisions of sec. 74.44, Stats., elected to become a purchaser and therefore required to take all lands sold for delinquent taxes, does par. (b) relieve the county from paying the amount of its bid for land sold for drainage assessments? Plaintiffs claim that it applies only when the county is a statutory bidder. The defendants claim it applies when the county is a purchaser.

Prior to 1911 the statutory provision relating to the sale of lands for drainage assessments was contained in sec. 1379—25, Stats., and in effect made the general laws relating to the sale of lands for taxes applicable to drainage assessments where the same were returned delinquent by town, city, or village treasurer.

By ch. 541, Laws of 1911, this section was substantially modified. By that chapter it was provided that where lands

located within a drainage district have been offered for sale, and such lands have not been sold, the county treasurer of the county in which such lands are situated shall bid in such lands for the county in trust, but the county shall not in any way be liable for such unpaid or future assessments, and no credit shall be extended to the treasurer of the town, city, or village within which such lands lie for such unpaid assessments on the lands so bid in, but the county clerk shall give to the county treasurer a statement showing the amount of assessment on such lands bid in by the county. It is to be noted that this provision applied only to lands offered for sale and not sold. So far as settlement between the local treasurers and the county treasurer was concerned, it put drainage assessments in a classification by themselves. At this time the county was not authorized to become the exclusive bidder.

The law was revised by ch. 557, Laws of 1919, and this provision was dropped out for what reason we do not know. In this connection it must be remembered that the legislature of 1917 had enacted what is now sec. 74.44, Stats., authorizing the county to become bidder for *any and all lands* sold for *general taxes*. This section as enacted, of course, did not authorize the county to become a purchaser of lands sold for drainage assessments. As already stated, this act (ch. 268, Laws of 1917; sec. 1138*m*, Stats. 1917) was declared invalid because discriminatory, but was re-enacted in 1921, but a significant change was made in the law. The 1921 act (ch. 96) provided:

"The county board of any county may authorize and direct the county treasurer to bid in and become the purchaser of *all lands* sold for taxes for the amount of *taxes*, interest and charges remaining unpaid thereon. . . ."

The law now related to "taxes," not "general taxes," as did the law of 1917. The provision for the sale of lands for drainage assessments remained substantially the same.

Ch. 327, Laws of 1923, created three new paragraphs: Sec. 1379—24 (4) (a), (b), and (c), Stats. Pars. (a) and (b) provided:

"(a) The county bidding in such drainage-assessment certificates shall not be held or required to pay therefor, or be in any manner held liable thereon, but shall hold and sell and assign the said certificates in trust for the benefit of the drainage district in which the lands so sold are situated.

"(b) Whenever any lands, located within any drainage district, shall have been offered for sale and such lands have not been sold, the county treasurer of the county in which such lands are situated shall bid in such lands for the county in trust, but the county shall not in any way be liable for such unpaid or future drainage assessments; and no credit shall be extended by the county to the treasurer of the town, city, or village," etc.

These paragraphs clearly refer to two kinds of bidding. Par. (a) refers to the duty of the county when it is a bidder under the provisions of what is now sec. 74.44, Stats. Par. (b) defined its duty when it was a bidder under the old sec. 1138, Stats., now sec. 74.42. While we are not advised in regard to the matter it seems probable that when counties sought to become exclusive purchasers they found themselves charged with delinquent drainage assessments. This probably led to the enactment of par. (a), ch. 327, Laws of 1923, which operated to relieve the county of the obligation to settle for delinquent drainage assessments, when it proceeded under sec. 74.44, Stats., see *State ex rel. Little Yellow D. Dist. v. Juneau County* (1929), 199 Wis. 476, 227 N. W. 12. Par. (b) applies when the county is a statutory bidder in accordance with the law as it had been since the beginning. What were pars. (a) and (b) of ch. 327, Laws of 1923, are now sec. 89.37 (4) (b) and (c), Stats. Therefore the county is relieved from the obligation to pay delinquent drainage assessments whether it becomes an owner by purchase or by operation of law (statutory bidder).

The plaintiffs contend that if it is held that par. (b) operates to relieve the county from the obligation to pay for the drainage-assessment certificates bid in by it, then the statute will be unconstitutional under the doctrine of *State ex rel. Mason v. Larsen, supra.* The argument is that if so construed the law would permit a county to become an exclusive bidder at the tax sale; that the county would be required to pay on account of general taxes for certificates, but would become a mere collection agent as to delinquent drainage taxes, and for that reason would be discriminatory. In *State ex rel. Mason v. Larsen, supra,* it was held that the law as it then stood made it optional with the county to purchase any or all lands; that this optional provision operated to discriminate as between taxpayers. We observe no similar discrimination as between taxpayers under the law as it now stands. The classification under the present statute is between land sold for general taxes and land sold for special drainage taxes. All taxpayers in the same class are treated alike.

It is considered that there is a sound basis for this classification. There was every reason why the county if it became the exclusive bidder upon the tax sale for lands sold for general taxes should be required to account to the various municipalities which might otherwise be without funds. As was pointed out in *State ex rel. Mason v. Larsen, supra,* the whole purpose and object of a tax sale is to acquire the means of supporting the government. Under the statute as it now stands all drainage assessments are treated alike. There is no discrimination between persons similarly situated.

The conclusion at which we have arrived is supported by legislative interpretation. If, as is contended by the plaintiffs, par. (b) applies only when the county is a statutory bidder, there could be no object in the enactment of par. (c).

It is manifest that the two paragraphs refer to two different situations, as has already been pointed out.

Furthermore, sec. 74.44, Stats., was amended in ch. 89, Laws of 1923, to provide:

"Any certificate of sale, except as to drainage assessments, owned by any county shall constitute collateral security for any loan to such county to an amount equal to one half the face value of such certificate when negotiated by the county clerk and treasurer."

If, when the county is a statutory bidder, it is obliged to pay for certificates bid in by it on account of drainage assessments, then why should it not have the right to pledge such certificates? We call attention also to the fact that under the provisions of sec. 89.37 (4) (d), Stats., if drainage-assessment certificates remain unredeemed, the county, the drainage commissioners, or any creditor or bondholder of the drainage district may upon application have the lands resold. This is a right that could belong only to the drainage district or some of its obligees. If the county was the owner and required to pay for the certificates, certainly the obligees of the drainage district would have no interest in the certificates and therefore no right to foreclose them. It would be otherwise if the county merely held them in trust.

It is considered for the reasons stated that the statute as construed is not discriminatory but is valid; that the defendant county is relieved from the obligation to pay for the drainage certificates bid in by it pursuant to the provisions of sec. 74.44, Stats.

We turn now to a consideration of assessment certificates issued pursuant to sec. 88.14, Stats., which is a part of ch. 88, entitled "Farm Drainage Law." Ch. 89 is entitled "Drainage District Law." It was clearly the intent and purpose of the legislature to provide two separate and distinct

systems of drainage law by the enactment of these chapters. Sec. 88.14 (1), Stats. 1935, provides:

"Each city, town, and village clerk shall insert in the tax roll for each year the amounts of the unpaid assessments and interest thereon due that year against the respective lands and corporations as certified to him by the secretary of the board. Such assessments and interest shall be collected by the treasurer of each respective town, city, and village and if unpaid, returned by him to the county treasurer. Such assessments and interest shall be kept separate from general taxes and if unpaid shall be sold in the same manner as general taxes and a separate certificate of sale shall be issued therefor in substantially the same form as certificates of sale of lands for general taxes. If taxes and drainage assessments against the same lands are sold at the annual tax sale they shall be sold together to the same bidder. After the expiration of three years from the issuing of a drainage-assessment certificate a deed substantially in the same form as a tax deed may be issued thereon. No drainage-assessment deed shall cut off any unpaid or subsequent drainage assessment or tax nor shall any tax deed cut off any drainage assessment."

A comparison of this section with sec. 89.37, Stats., discloses that they are widely different. For instance, nowhere in ch. 88 is there a provision corresponding to sec. 89.37 (6). Sub. (6) applies the rules of law applicable to the collection of taxes and sale of lands for taxes and the issuance of tax deeds to the collection of and sale of lands for drainage assessments and the issuance of drainage-assessment deeds. However, sec. 89.72 provides:

"The provisions of chapter 89 of the statutes shall remain in full force and effect as to all districts organized and in process of organization prior to the taking effect of this section, under any law of this state, and as to farm drainages organized, or to be organized, under chapter 88 of the statutes."

This section was created by ch. 41, Laws of 1925. The Farm Drainage Law in its present form was created by ch. 446, Laws of 1919. In 1919, by ch. 557, prior drainage laws were repealed and the present Drainage District Law created. Ch. 41, Laws of 1925, also created sec. 89.71, Stats., which provides:

"No proceedings shall be instituted after the taking effect of this section for the organization of any drainage district under chapter 89 of the statutes."

By ch. 531, Laws of 1927, secs. 89.667 and 89.668, Stats., were created. These sections provide for the division of drainage districts and for transfer of lands within a drainage district to the farm-drainage laws. Sec. 89.72 has not heretofore been considered by the court.

In view of the fact that chs. 88 and 89, Stats., are so closely related, and the Farm Drainage Law does not provide a complete and workable system, and no provision is made therein for the application of general tax laws to farm-drainage assessments, it is considered that it was the clear legislative intent to incorporate such parts of ch. 89 as are applicable into ch. 88. Therefore, the conclusion that we have reached with respect to drainage-district assessments applies to farm-drainage assessments.

*By the Court:*—The mandate in each case is: Judgment appealed from is reversed, and cause remanded for further proceedings according to law.